UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARONDA HOMES, INC.
OF FLORIDA,

       Plaintiff,                     Case No. 6:14-cv-1287 ORL-31-TBS

v.

PROGRESSIVE EXPRESS
INSURANCE COMPANY,

       Defendant.

_____/

**DEFENDANT'S MOTION TO COMPEL DEPOSITION OF WITNESS JEFFREY GAGAT ON APRIL 16, 2015 AND INCORPORATED MEMORANDUM OF LAW**

    Defendant, Progressive Express Insurance Company (hereafter "Progressive"), pursuant to Rules 26 and 37, Fed. R. Civ. P, and Rule 3.01, Local Rules of the U.S. District Court, Middle District of Florida, moves the court for entry of an order compelling the deposition of Jeffrey Gagat on April 16, 2015, and as grounds therefore states:

**SUMMARY**

1.    The remaining issue in this case is whether Progressive provided an inadequate defense to its insured, Maronda Homes, thereby breaching its contractual duty to defend and making it liable to reimburse Maronda for the attorney's fees incurred by its personal counsel (Mr. Brady) it chose to have defend it in lieu of the attorneys retained by Progressive.

2.      Jeffrey Gagat is Maronda Homes' corporate controller.[1]     He was identified by

Maronda Homes' designated 30(b)(6) corporate representative, Robert Sellers, as the

person who oversaw the defense of the underlying claim at issue, and who has knowledge

about how the defense was allegedly inadequate and the communications with

Progressive about its defense and payment of Maronda's defense fees, and the defense

fees Maronda paid related to the underlying claim and on what terms, and finally the

other insurance available to Maronda Homes, among other pertinent information.

3.      Mr. Sellers continually deferred to Mr. Gagat as the one with superior knowledge on

those issues, as set forth more fully below.

4.      Progressive subpoenaed Mr. Gagat for deposition on April 16, 2015 at 10:00 am in

Pittsburg, Pennsylvania, near where Mr. Gagat works and resides.   Progressive is well

within the 10-deposition limit in this case.

5.      Counsel for Maronda has advised they will not permit Mr. Gagat's deposition because

they do not believe Mr. Gagat has "unique or superior knowledge of the facts" compared

to Maronda's previously designated corporate representative, Mr. Sellers.

6.      Mr. Sellers' testimony made clear Mr. Gagat has unique, non-privileged information

about the facts in this case, that are relevant and reasonably calculated to lead to the

discovery of admissible evidence.   That fact was further evident by Maronda's inclusion

of Mr. Gagat in a number of entries on its attorney's billing records for the underlying

case, produced in this case in support of Maronda Homes' alleged damages.

7.      Progressive tried to get the information through other, less intrusive means, but was not

successful.

---

[1] See deposition of Robert Sellers, P. 10, lines 7 – 11.

8.    Mr. Gagat is a material witness with direct knowledge about the issues in dispute.   His

deposition is a basic part of discovery, and should be permitted pursuant to Rule 26(b),

Fed. R. Civ. P, which requires broad and liberal discovery.

## ARGUMENT AND MEMORANDUM OF LAW

**Facts:**

9.    Plaintiff, Maronda Homes, Inc. of Florida is a residential home builder and Progressive's

insured party.   Maronda Homes was sued by Carlos Mesa for injuries resulting from an

accident.   Progressive assigned two different defense counsel to defend Maronda Homes

in that suit, at Maronda's request.   Maronda Homes claimed Progressive's defense was

not adequate, and insisted on hiring its own lawyer, Mr. Brady, to defend itself.   It

claims the alleged inadequate defense constituted a breach of Progressive's duty to

defend, and is seeking what it claims is reimbursement of fees and costs it paid for the

defense of the case, as the damages against Progressive herein.

10.   Maronda Homes also claims that part of the defense Progressive owed to it was to pursue

a claim on Maronda's behalf against third parties for damages to Maronda's trailer

involved in the accident, and that the failure to do so constituted part of the alleged

inadequate defense.   Progressive disagrees its duty to defend included any obligation to

affirmatively pursue a claim for damages on behalf of its insured, and expects to have

that issue determined on summary judgment.   However, that has not yet occurred and it s

nevertheless a pending issue to be litigated in this case.

11.   The Court has determined that "the sole remaining issue is in this case is whether

Progressive breached its duty to defend by failing to pay for the counsel retained by

Maronda," (Dkt. 49, p. 3) which determination "is largely fact driven" (Id.) based on

whether Progressive provided an inadequate defense to Maronda that would have justified Maronda hiring its own attorney.

12.    Progressive sought to depose Maronda Homes' Rule 30(b)(6) corporate representative with the most knowledge regarding Maronda's claims that Progressive breached the insurance contract and failed to provided an adequate defense to the Mesa claims.   A copy of that Notice is attached as Exhibit A.

13.    Maronda Homes designated Robert Sellers, a general manager from one of its divisions, as its corporate representative in that regard.   Mr. Sellers is also a material, individual witness in the case.   Progressive deposed Mr. Sellers in both capacities on February 9, 2015.   A copy of his deposition transcript has been filed separately with the Court.

14.    During that deposition, Mr. Sellers identified Jeffrey Gagat as Maronda Homes' corporate controller, and deferred to him as the one who handled and had superior knowledge of material facts pertaining to the issues in this case, identified more particularly below.

15.    Progressive subpoenaed Mr. Gagat to attend a deposition on April 16, 2015[2] at 10:00 am in Pittsburg, Pennsylvania, near where Mr. Gagat works and resides.   A copy of the subpoena served on Mr. Gagat and the Notice of his Deposition is attached as Composite Exhibit B.   To date, the only deposition Progressive has taken is that of Mr. Sellers.   It's counsel have scheduled one other deposition in addition to Mr. Gagat's and are seeking to schedule only two more.[3]   Progressive is well within the ten deposition limit governing the case.

---

[2] This is prior to the discovery cut-off in this case.
[3] Progressive's counsel are seeking to depose the attorneys, Mr. Brady and Ms. Wasula, who were hired by Maronda Homes to defend the underlying case in lieu of counsel hired by

16.   Counsel for Maronda has advised they will not permit Mr. Gagat's deposition.   They

have asserted they do not believe Mr. Gagat has "unique or superior knowledge of the

facts" compared to Maronda's previously designated corporate representative, Mr.

Sellers, but have not provided any declaration to that effect from Mr. Gagat himself.

17.   They have asserted that Mr. Gagat's deposition is prohibited under the "apex doctrine,"[4]

and also not pertinent since they produced their billing records.

**Memorandum of Law and Argument:**

18.   Rule 37 permits the court to compel a discovery response, including a deposition, upon a

properly served subpoena.[5]   Discovery is at the discretion of the court, and should be

construed broadly.

19.   Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged

matter that is relevant to any party's claim or defense—including the existence,

description, nature, custody, condition, and location of any documents or other tangible

things and the identity and location of persons who know of any discoverable matter."

20.   It further mandates that "[r]elevant information need not be admissible at the trial if the

discovery appears reasonably calculated to lead to the discovery of admissible evidence."

21.   Accordingly, the rule permits the court to "order discovery of any matter relevant to the

subject matter involved in the action" for good cause shown.

---

Progressive.   To date, those depositions have not been permitted by those attorneys.   That
matter will be addressed separately.

[4] "[A]ccording to the apex doctrine, 'when a high-ranking official of a corporation does not have
any direct knowledge of the facts, it is inappropriate to compel his deposition without first
deposing lesser-ranking employees who have more direct knowledge of the facts at issue'."
*Little League Baseball, Inc. v. Kaplan*, 08-60554-CIV, 2009 WL 426277, at *2 (S.D. Fla.
2009)(quoting *Stelor Prods., Inc. v. Google, Inc*., No. 05-80387, 2008 WL 4218107, at *4
(S.D.Fla. Sept.15, 2008) (citing *United States v. Baine*, 141 F.R.D. 332, 334 (M.D.Ala.1991)).

22.     "The [U.S. Supreme] Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials."[6]

23.     Despite the breadth of discovery, courts have "restricted efforts to depose senior executives where the party seeking the deposition can obtain the same information through a less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case."[7]   Put another way "[a]n officer at the apex of the corporation can only be deposed if he or she has unique knowledge or the subject matter requested in deposition was pursued unsatisfactorily through less intrusive means."[8]   That is the "apex doctrine" cited by Plaintiff to oppose Mr. Gagat's deposition.

---

[5]  *Id.; McMahon v. Presidential Airways, Inc.*, 6:05CV1002-ORL28JGC, 2006 WL 5359797, at *1 - 2 (M.D. Fla. 2006)

[6]  *Herbert v. Lando*, 441 U.S. 153, 177 (1979)(citing *Schlagenhauf v. Holder*, 379 U.S. 104, 114–115, 85 S.Ct. 234, 241, 13 L.Ed.2d 152 (1964); *Hickman v. Taylor*, 329 U.S. 495, 501, 507, 67 S.Ct. 385, 388, 391, 91 L.Ed. 451 (1947); Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1546 (11th Cir.1985) (noting that the Federal Rules of Civil Procedure strongly favor full discovery whenever possible).

[7]  *Brown v. Branch Banking & Trust Co*., 13-81192-CIV, 2014 WL 235455, at *2 (S.D. Fla. 2014)(quoting *Simon v. Pronational Ins. Co*., No. 07–60757, 2007 WL 60757, at *1 (S.D.Fla. Dec. 13, 2007) (Seltzer, M.J.) (quoting *Cardenas v. The Prudential Ins. Co. of Am*., Nos. Civ.99–1421(JRT/FLN), Civ.99–1422(JRT/FLN), Civ.99–1736(JRT/FLN), 2003 WL 21293757, at *1 (D.Minn. May 16, 2003)); *see, e.g., Thomas v. Int'l Business Machines*, 48 F.3d 478, 483–84 (10th Cir.1995)); *see also Little League Baseball, Inc. v. Kaplan*, 08-60554-CIV, 2009 WL 426277, at *2 (S.D. Fla. 2009)(quoting *Stelor Prods., Inc. v. Google, Inc.*, No. 05-80387, 2008 WL 4218107, at *4 (S.D.Fla. Sept.15, 2008) (citing *United States v. Baine*, 141 F.R.D. 332, 334 (M.D.Ala.1991)).

[8]  *McMahon v. Presidential Airways, Inc.,* 6:05CV1002-ORL28JGC, 2006 WL 5359797, at *2 (M.D. Fla. 2006)(citing *e.g., Salter v. Upjohn Co*., 593 F.2d 649, 651 (5th Cir.1979) (affirmed protective order because the plaintiff sought to depose the president in the first instance before lower level employees, and because the trial court had provided that plaintiff could take the deposition if the testimony of other Upjohn employees with more knowledge proved unsatisfactory); *Stelor Prods., Inc. v. Google, Inc.,* No. 05-80387, 2008 WL 4218107, at *4 (S.D.Fla. Sept.15, 2008) (citing *United States v. Baine*, 141 F.R.D. 332, 334 (M.D.Ala.1991),

24.     The purpose of shielding high level executives from deposition is because, by virtue of their positions, those executives "are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts."[9]

25.     The apex doctrine is not a "per se" rule,[10] but courts have granted protective orders preventing the deposition of a "high-ranking executive officer" "where the officer possesses no unique knowledge regarding the underlying facts of the action and files a declaration stating his or her lack of knowledge."[11]

26.     The apex doctrine does not apply and should not prevent Mr. Gagat's deposition in this case.

27.     First, Progressive seeks to depose Mr. Gagat not strictly as a corporate representative of Maronda Homes, but as an individual, material witness with knowledge of facts that occurred.   Such a deposition is not prevented by the apex doctrine.

28.     Even in the capacity as a corporate representative, Mr. Gagat is not the type of "high-ranking executive officer" the apex doctrine was intended to protect.   He is not an officer or director, but simply the corporate controller.   In cases where courts have protected a corporate official, they have been those with higher positions such as the

---

and stating "In this Circuit, according to the apex doctrine, "when a high-ranking official of a corporation does not have any direct knowledge of the facts, it is inappropriate to compel his deposition without first deposing lesser-ranking employees who have more direct knowledge of the facts at issue.").

[9] *Brown v. Branch Banking & Trust Co*., 13-81192-CIV, 2014 WL 235455, at *2 (S.D. Fla. 2014)(citing *In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig*., 205 F.R.D. 535, 536 (S.D.Ind.2002); *see also Celebrity v. Ultra Clean Holding, Inc*., No. C 05–4374 MMC (JL), 2007 WL 205067, at *3 (N.D.Cal. Jan.25, 2007)).

[10] *See, e.g. Brown v. Branch Banking & Trust Co*., 13-81192-CIV, 2014 WL 235455, at *2 (S.D. Fla. 2014)("no per se rule prohibits depositions of top corporate executives…").

[11] *McMahon v. Presidential Airways, Inc*., No. 6:05-cv-1002-Orl-28JGG, 2006 WL 5359797, at * 2 (M.D.Fla. Jan.18, 2006)(emphasis added); *Degenhart, M.D. v. Arthur State Bank*, No.

president, CEO, chairman of the board, etc.… who had no direct dealing with the conduct at issue.[12]

29.    Mr. Gagat has also not provided any declaration asserting his lack of knowledge, and indeed cannot do so in good faith.

30.    Even if the apex doctrine may be used to protect employees on the level of Mr. Gagat, Progressive is not seeking to depose him for purposes of harassment or to be abusive, as the apex doctrine was intended to protect.   It is seeking to depose him about the narrow issues of the alleged inadequate defense and the extent of damages incurred and sought in this case, for which the discovery to date has indicated he has material knowledge.

31.    Progressive deposed a lower level employee first, as the corporate representative designated by Maronda Homes.   That deposition was unsatisfactory.   That employee (Mr. Sellers) repeatedly deferred to Mr. Gagat as having superior knowledge on the material issues in the case.   Mr. Sellers testified in pertinent part:[13]

   a)   As of the material date of April 9, 2014, Mr. Gagat was overseeing the day-to-day defense of the Mesa case against Maronda Homes. P. 111, lines 14 – 19.

   b)   Mr. Gagat was the primary point person at Maronda Homes for communications with counsel about the "Merida case" and what occurred.   P. 14, lines 20 – 23.

   c)   Mr. Gagat would know whether Maronda ever asked Progressive to have its counsel, Mr. Brady, defend them and pay Brady's fees, and whether Progressive ever

---

CV411–041, 2011 WL 3651312, at *1 (S.D.Ga. Aug.8, 2011); *Brown v. Branch Banking & Trust Co.*, 13-81192-CIV, 2014 WL 235455, at *2 (S.D. Fla. 2014).
[12] *See, e.g. Carnival Corp. v. Rolls-Royce PLC*, 08-23318-CIV, 2010 WL 1644959, at *2 (S.D. Fla. 2010)(protecting a CEO from deposition); *McMahon v. Presidential Airways, Inc.*, 6:05CV1002-ORL28JGC, 2006 WL 5359797, at *2 - 3 (M.D. Fla. 2006)(protecting a President, Chairman and CEO from deposition); *Thomas v. IBM*, 48 F.3d 478, 483 (10th Cir.1995) (affirming the grant of a protective order precluding the deposition of the chairman of the Board of Directors of IBM); *Brown v. Branch Banking & Trust Co.*, 13-81192-CIV, 2014 WL 235455, at *2 (S.D. Fla. 2014)(protecting a president of a corporation from deposition).
[13] Mr. Sellers' deposition has been filed with the Court.   The page and line numbers below indicate the page and line numbers where the pertinent testimony may be found within that deposition.

consented to pay Brady's fees, and whether Maronda Homes had other expenses related to the defense it was seeking.  P. 40, line 9 – p. 41, line 14.

d) Mr. Gagat would have been the one to enter into the particular agreement for representation with Mr. Brady for the suits at issue in this case.   Mr. Gagat would have all the knowledge about the extent of Mr. Brady's representation and the terms of its payments to him, and how much he was paid.  P. 10, line 13 – p. 11, line 2.

e) Mr. Gagat would have the information and records regarding how much Maronda Homes has paid Mr. Brady to date as a result of any wrongdoing by Progressive. P. 11, lines 3 – 9.

f) Mr. Gagat should know about what insurance Maronda Homes has, with which insurer(s) and the types of insurance.  P. 13, line 16 – p. 14, line 7.

g) Mr. Gagat would know whether any other person paid Mr. Brady's bills for his representation of Maronda Homes in the underlying case.  P. 14, lines 2 – 7.

h) Upon getting information about the accident involving Mr. Mesa, Mr. Sellers immediately notified others in the company about the accident, including Mr. Gagat.  P. 14, lines 10 – 19.

i) Mr. Sellers' first involvement in the underlying case was when he received a certified mail letter from the plaintiff's attorney. At that time he handed it off to Mr. Gagat to handle and Mr. Gagat handed it off to Mr. Brady.  P. 15, line 17 – p. 16, line 4.

j) Mr. Sellers does not remember being involved in communications between Mr. Gagat and Mr. Brady relative to the case.  P. 16, lines 5 – 7.

k) If Mr. Sellers had received a June 18, 2013 letter from Progressive about the Merida claim (Exh. 1 to Sellers' deposition), he would have forwarded it via their mail system to Mr. Gagat and Mr. Brady. P. 16, lines 15 – 22.

l) Mr. Sellers' own policy in dealing with calls about lawsuits is typically to contact both counsel and Mr. Gagat. P. 20, line 25 – p. 21, line 4.

m) Mr. Sellers has no information about a call from Progressive adjuster Linda Urichko on September 4, 2013 at 12:05 pm about the underlying claims, and does not know whether he returned the call, but would have contacted Mr. Gagat and Mr. Brady and let them know he was receiving calls. P. 22, lines 1 – 11.

n) Mr. Sellers would have referred subsequent calls to Mr. Gagat in the same way.  P. 24, line 12 – p. 26, line 1.

o) If Mr. Sellers had gotten a letter from Progressive asking whether they had other insurance, he would not have responded to it, but would have passed it on to Mr. Gagat and Mr. Brady to address.  P. 30, line 4 – p. 31, line 15.

p) Mr. Sellers also would have referred any other letters to Mr. Gagat and Mr. Brady.   P. 32, lines 3 – 22; p. 103, lines 10 – 15.

q) If anybody from Maronda advised Progressive about the damage to the trailer and its contents it "would have been handled through [Mr.] Gagat's office to Mr. Brady."   P. 57, line 9 – p. 58, line 12.

r) Mr. Gagat in addition to Mr. Brady may be able to testify about what Maronda contends is required to fulfill a duty to appoint separate and independent counsel, as written in the May 8 2014 letter.   P. 64, lines 17 – 25.

s) Mr. Gagat is the one who dealt with Mr. Brady on other matters for Maronda Homes. P. 10, lines 5 – 11.

32.   Further, Maronda Homes has produced billing records for attorney's fees it claims it is seeking reimbursement, as the damage in this case.[14]   Mr. Gagat is referenced as being involved in a number of entries, confirming he was intimately involved as the client contact for the matters pertaining to the defense Maronda has alleged was inadequate, and the attorney's fees paid and on what terms, which is relevant to the damages being sought in this case.   Copies of those billing records are not attached, as it is not clear whether there is included in them work product of Maronda Homes for another ongoing claim. If the court wishes to review the billing records, counsel for Progressive will file them under seal with the Court's approval.

33.   Progressive also sent Interrogatories asking similar questions, but received one rambling response as "Exhibit A" to its answers, purportedly a response to thirteen separate and specific questions, without differentiation.   Most of those questions were also answered

---

[14] Those records are inconclusive to confirm exactly which fees Maronda Homes is seeking as damages in this particular case, as they include numerous billing entries for matters beyond the time the underlying claim was settled in October, 2014, (see Dkt. 42), and include entries during the material time-frame of this case that appear unrelated to the underlying case.   Progressive is seeking to depose the attorneys who made the billing entries to seek more information about them.   However, those depositions are not sufficient to completely vet the issues, as they are not and have not been designated as corporate representatives of the party in this case making the claims.

with a "Note" that said Maronda's attorneys (not its company representatives) are still searching through "voluminous" documents to find more answers, even though the paper discovery in this case was provided to Maronda Homes months ago.   A copy of those Interrogatory Answers (including the Interrogatory Questions themselves) is attached as Exhibit C.   Under those circumstances, those interrogatories are not satisfactory to replace a deposition of Mr. Gagat.

34.     Progressive does not intend to seek discovery of privileged information from Mr. Gagat. However, the continued deferral by Mr. Sellers to Mr. Gagat's involvement and superior knowledge on the material issues in this case, combined with the references to him in Maronda's attorney's time records make it clear that Mr. Gagat is indeed a material witness with unique and relevant knowledge of pertinent facts.   Those facts include the nature and details about the alleged inadequate defense by Progressive (since Mr. Gagat was said to have been the client contact for the day-to-day aspects of the defense), the specific amount of the damages being sought as reimbursement for the defense and the factual basis for each component, who would have paid them and on what terms, and any collateral sources available for their payment, and the existence or non existence of communications that took place about the defense and claims for which Maronda Homes is now critical of Progressive.

35.     At the very least, the deposition of Mr. Gagat is reasonably calculated to lead to the discovery of admissible evidence, making his testimony relevant and discoverable under Rule 26, Fed. R. Civ. P.   It is clear that good cause exists for Progressive to depose Mr. Gagat.

36.     If Maronda Homes disagrees on specific issues, its remedy is to object to a specific question or questions during the deposition, as permitted by law, not to simply refuse to permit the deposition.

37.     Pursuant to Local Rule 3.01, Counsel for Progressive certifies that they have conferred with counsel for Maronda Homes prior to filing this Motion, and Maronda Homes does not agree with the relief requested in this Motion.

Respectfully Submitted March 27, 2015

s / Weslee L. Ferron
Daniel A. Martinez, Esq.
Florida Bar ID No: 0009016
Email: dmartinez@civillit.com
Jennifer C. Worden, Esq., Trial Counsel
Florida Bar ID No: 0498191
Email: jworden@civillit.com
Weslee L. Ferron, Esq.
Florida Bar ID No: 0548537
Email: wferron@civillit.com
Martinez Denbo, L.L.C.
2935 First Avenue North, Second Floor
St. Petersburg, Florida 33713
**Service address: servicestp@civillit.com**
(727) 894-3535, Telephone Number
(727) 502-9621, Facsimile Number
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to Steven M. Brady, Esquire, attorney for Plaintiff.

s / Weslee L. Ferron
Weslee L. Ferron, Esq.
Florida Bar ID No: 0548537
Email: wferron@civillit.com
Attorneys for Defendants
