**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MARONDA HOMES, INC. OF FLORIDA,**

        **Plaintiff,**

**v.**                              **Case No:  6:14-cv-1287-Orl-31TBS**

**PROGRESSIVE EXPRESS INSURANCE COMPANY,**

        **Defendant.**

## ORDER

This matter is before the Court without oral argument on the parties' cross-motions for summary judgment and supporting documents.   The relevant papers are:

**Plaintiff's Motion:**
- Plaintiff Maronda Homes, Inc. of Florida's ("Maronda") Motion for Summary Judgment (Doc. 90).
- Defendant Progressive Express Insurance Company's ("Progressive") Response in Opposition to Summary Judgment (Doc. 104).
- Maronda's Reply in Support of Summary Judgment (Doc. 108).

**Defendant's Motion:**
- Progressive's Amended Motion for Summary Judgment (Doc. 103).[1]
- Maronda's Response in Opposition. (Doc. 110).
- Progressive's Reply in Support of Summary Judgment. (Doc. 113).

**I.   Background**

On May 10, 2013, Terry Chance was operating a tractor owned by AC&L Farms, Inc. ("AC&L"), and towing a trailer owned by Maronda when he collided with a tractor/trailer driven by Carlos Mesa-Merida ("Mesa-Merida"). AC&L was insured by Progressive under a $300,000.00 insurance policy, which covered Maronda. On February 20, 2014, Mesa-Merida sued Maronda and others for property damage and injuries suffered in the accident. Progressive undertook to defend

---

[1] In addition to the Motion for Summary Judgment, Progressive separately filed the deposition of Maronda's corporate representative Jeffrey Gagat. (Doc. 102).

Maronda, but Maronda chose to hire its own lawyer, Steven Brady. By this suit Maronda seeks to compel Progressive to pay Mr. Brady's fee.[2]

**II.     Facts**

Maronda was served with the Mesa-Merida lawsuit on March 10, 2014. Instead of tendering its claim to Progressive, Maronda contacted its personal attorney, Steven Brady. (Doc. 89 at 10:2-12). Maronda's corporate representative stated that from the day he was served, he did not "feel comfortable with Progressive adequately representing" the company. (Doc. 102 at 19-20). This appears to have stemmed from the fact that the Mesa-Merida claim had been outstanding for nearly a year but not resolved pre-suit. (Id.). On March 31, 2014 Brady filed an answer and affirmative defenses in the underlying case.

In early April Brady requested insurance information from the co-defendants in the underlying case. Soon thereafter, Maronda and Brady learned that Progressive had appointed Leslie Moore to represent all the defendants in the Mesa case. Maronda objected on the basis that Moore had a conflict of interest, because Maronda had cross-claims that it sought to assert against its co-defendants. In response to Maronda's complaint about Moore's conflict of interest, Progressive retained attorney Jeffrey Bigman, a thirty-year Board Certified Civil Trial attorney, to represent Maronda individually. Bigman filed a notice of appearance on May 19, 2014 and, on June 23, 2014, Brady rejected Bigman on behalf of Maronda. (Doc. 103-41). Brady stated that he viewed Bigman's representation as compromised due to Bigman's reluctance to pursue claims against Maronda's co-defendants or enter into a Coblentz agreement with the plaintiff.[3] By November 2014 the Mesa-Merida lawsuit was settled within policy limits and dismissed with prejudice. (*See* Doc. 46-1).

---

[2] The Mesa-Merida lawsuit was ultimately settled within the Progressive policy limit, so the only issue here is whether Progressive breached its duty to defend by declining to pay Mr. Brady's fees.

[3] In the insurance context, a Coblentz agreement is, at base, an agreement by a plaintiff and defendant for an entry of judgment against the defendant and an assignment of the defendant's

- 2 -

**III.     Standard**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

---

claims against an insurer to the plaintiff. Thereby, the plaintiff is able to pursue a claim directly against the defendant's insurer and the defendant escapes the litigation.

**IV.     Analysis**

Florida law requires an insurer to provide an adequate defense of a claim against its insured that is covered by a policy. If the defense is not adequate and it is reasonable for an insured to retain its own counsel, then an insured may recoup attorney's fees from an insurer because it has, in effect, forced the insured to retain its own counsel. *See Carrousel Concessions, Inc. v. Florida Ins. Guar. Ass'n*, 483 So. 2d 513, 517 (Fla. Dist. Ct. App. 1986) ("If Carrousel is able to establish that the defense supplied by FIGA was inadequate and that it was reasonable for Carrousel to engage the services of its own attorneys, Carrousel will be entitled to recover all reasonable costs and attorneys' fees incurred at the trial level."). This Court previously analyzed the question and concluded that the critical question as to whether independent counsel's fee may be recouped from the insurer was whether a conflict between the insured and insurer actually affected the insurer-selected attorney's representation.

> The right to control the defense is "a valuable one in that it reserves to the insurer the right to protect itself against unwarranted liability claims and is essential in protecting its financial interest in the outcome of litigation." This meaningful contractual right should not be penalized merely because there exists the potential for insurer-selected counsel to become impermissibly conflicted in its representation. To so hold would require this Court to recognize a conclusive presumption, based on nothing more than the existence of a potential conflict between the insured and the insurer, that counsel is unable to provide independent representation. The Court is not willing to graft such an unwarranted presumption into the law. Instead, **there must be some evidence to suggest that the conflict between the insurer and the insured actually affected counsel's representation so that it may be said that counsel's actions elevated the interests of the insurer over those of his client, the insured.**

*Travelers Indem. Co. of Illinois v. Royal Oak Enterprises, Inc.*, 344 F. Supp. 2d 1358, 1374 (M.D. Fla. 2004) (citations omitted) *aff'd sub nom. Travelers Indem. Co. of Ill. v. Royal Oak Enterprises, Inc.*, 171 F. App'x 831 (11th Cir. 2006).

As recognized in *Travelers Indemnity Co.*, the right to manage claims and defenses by the insurer can be overridden only when the insurer's interest interferes with independent representation by counsel provided by the insurer. *See also Farinas v. Florida Farm Bureau Gen. Ins. Co.*, 850 So.

2d 555, 559 (Fla. Dist. Ct. App. 2003) ("the insured has relinquished control of all decisions regarding claims to the insurer").[4] While an insured certainly has the right to hire its own attorney it cannot do so at the insurer's expense unless the insurer has failed to provide an adequate defense. What constitutes an adequate defense was examined in *Doe v. OneBeacon American Insurance Co.*, No. 1:11-CV-00275-MP-GRJ, 2014 WL 5092258 (N.D. Fla. Oct. 9, 2014), which stated:

> Although Florida courts have not explicitly defined the parameters of what constitutes an "adequate" defense, they have recognized that the duty to defend, including the duty to adequately defend, "arises solely from the language of the insurance contract[,]" specifically "[w]here the insurer acts negligently in performing its duty."

*Id.* at *18 (quoting *Carrousel Concessions, Inc.*, 483 So. 2d at 516).

From the start of the Mesa-Merida lawsuit Maronda involved Brady and rejected Progressive's efforts to provide a defense. For a decision to be reasonable, it must be predicated on the facts and information known to the decision-maker at the time the decision is made—Maronda had no basis in fact to conclude that the defense was inadequate because it precluded Progressive's efforts to provide one. The day Maronda was served, it retained its own counsel without informing Progressive that service had been effected. Progressive first learned that services was completed due to Maronda filing an Answer and Affirmative Defense to the Mesa-Merida lawsuit. Progressive first attempted to provide defense counsel, attorney Moore, to all the defendants in the Mesa-Merida action. Upon hearing from Maronda's already-retained independent counsel that Maronda objected

---

[4] Maronda's claim that Progressive should have provided mutually agreeable counsel because Progressive proceeded under a reservation of right is without merit. Progressive's response to Maronda's request for insurance information included the statement: "There are no coverage defenses at this time, however, we reserve the right to amend this portion of our response, should any issues arise in the future." (*See* Doc. 90 at 5-6). That statement is not offering a defense under a reservation of rights to assert a coverage defense then in existence—it states that, as of that moment, Progressive believed it had a duty to defend Maronda. While the duty to defend might have changed by subsequent events, there was no reservation of the right to deny coverage based on the facts at the time, and therefore no obligation for Progressive to provide mutually agreeable counsel pursuant to Florida Statutes, section 627.426(2).

due to a conflict of interest,[5] Progressive responded to Maronda's concern by securing experienced independent counsel for Maronda, attorney Bigman. Maronda again objected, though this time on the basis that Bigman was reluctant to pursue affirmative claims or enter into a Coblentz agreement—in other words, Maronda disagreed with Bigman's litigation strategy. While the defense provided by Progressive may not have proceeded as Maronda had wished, there is no aspect of it which can be described as inadequate.[6] When Maronda decided to retain Brady, there was no basis to believe that Progressive was being negligent in providing a defense, nor did one manifest during the pendency of the Mesa-Merida case. If anything, the problems in the underlying case stem from coordination issues after Maronda's independent counsel became involved.

Maronda's sole affidavit in response to Progressive's Motion is the report of expert Christopher Hill. (Doc. 110-3). Hill's report asserts, at base, that the defense provided by

---

[5] Maronda asserts that Progressive and attorney Moore *should* have known of the potential conflict of mutual representation from the start. However, that does not show that they did, in fact, know of the conflict at the moment Moore was retained or that it was realized in the opening stages of the Mesa-Merida case. Further, in instances of civil co-representation where the representation creates a conflict of interest, that conflict is waivable. Rules Regulating the Florida Bar 4-1.7(b). The specter of a waivable conflict cannot establish that an insurer was providing an inadequate defense and that an insured was reasonable to retain independent counsel—particularly in a case where an insurer secured independent counsel for the insured after receiving complaint about mutual representation.

[6] Maronda includes two additional breach theories: 1) that Progressive did not produce its complete investigative file and should have; and 2) Maronda provided incomplete insurance disclosures. With regard to the insurance disclosures, Maronda appears to have largely abandoned this theory and cited no evidence in support of it. Further, Progressive has submitted evidence that insurance disclosures were, in fact, provided. (Doc. 103-18 (insurance disclosure noting that Maronda Homes was a party carbon copied to the correspondence)). With regard to Progressive not providing the complete investigative file, Maronda cites no contractual provision establishing it was entitled to the complete investigative file. Nor does Maronda cite any facts that support its contention its defense was, in fact, hindered by Progressive's failure to provide the complete file. Moreover, the deposition testimony of Progressive's corporate representative and Shari Statler cited by Maronda in support of this include several pages of confused questions that are, for the most part, seeking legal conclusions from fact witnesses. (*See* Doc. 90 at 3 (citing Tammy Morgan and Statler depositions)).

Progressive was not adequate. Hill's "opinion," however, is tantamount to legal argument.[7] It does not raise a disputed issue of material fact, nor is it particularly helpful to the Court in its legal analysis.

Maronda is, of course, free to hire its own counsel, but the issue here is whether Progressive has a contractual duty to pay for that counsel. Having considered the matter fully, the Court concludes that Progressive did not breach its duty to defend and has no obligation to compensate Moranda for services provided by its own counsel, Mr. Brady.

Therefore, it is

**ORDERED**, that Progressive's Amended Motion for Summary Judgment (Doc. 103) is **GRANTED** and Maronda's Motion for Summary Judgment (Doc. 90) is **DENIED.** The Clerk is directed to enter judgment in favor of Defendant and close the file. All other pending motions are **DENIED AS MOOT.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 7, 2015.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[7] One of Hill's headings states: "It was reasonable for Maronda to engage the services of its own attorneys given the conduct of Progressive in defending the action." However, that is precisely the question the Court must decide, and an expert opinion on the matter is not helpful or permissible. *See* Fed. R. Civ. P. 56(c)(2,4); Fed. R. Evid. 702; s*ee also Johnson v. Bush*, No. 00-3542-CIV, 2002 WL 34355953, at *1 (S.D. Fla. Apr. 19, 2002) (excluding expert opinion on basis that it offered legal opinion in the guise of expert report).